OPINION
Appellant Timothy Dunbar appeals his conviction for aggravated robbery from the Stark County Court of Common Pleas. The following facts give rise to this appeal. This charge was the result of appellant's repeated attempts to take money from Todd Linville and his girlfriend, Jenny Worrell. Appellant first met Todd Linville and Jenny Worrell, in May 1998, at a party. Todd Linville had money, at the party, as Jenny Worrell had just received proceeds from the settlement of a personal injury suit. At this party, appellant and Linville smoked marijuana together and subsequently went to the residence of one of Linville's friends. Linville wanted to borrow money, from his friend, for a cab ride home. Instead, appellant gave Linville a ride home that evening. Following this meeting with Linville and Worrell, appellant began taking money from them. The first occasion occurred two nights after Linville met appellant. Appellant went to Linville's apartment and informed him that someone had "shot up" his car. Appellant also informed Linville that Linville's friend, the friend Linville requested money from for a cab ride, was complaining that someone stole his wallet. As a result of this conversation, Linville gave appellant $200 after Linville flashed a butt of a gun at him and threatened to bind and gag Linville with duct tape and drop him off at a local quarry. Appellant also threatened to bind and gag Worrell's children with duct tape and drop them off outside the local welfare office. Approximately one week later, appellant visited Worrell when Linville was not home. Appellant demanded money from Worrell and threatened to bind Worrell and her children with duct tape and drop them off somewhere. Worrell gave appellant $40. Appellant forced Worrell to write an "IOU" for $150. Following this incident, Linville made a police report. The following week, appellant again went to Linville's residence, with a gun, and demanded $150. Linville gave appellant $100 after appellant promised not to bother Linville or his family again. When Linville gave appellant the money, appellant hugged him and grabbed the salami sandwich Linville was eating and ran out of the residence. Appellant's final visit to Linville's residence occurred on June 18, 1999. At approximately 4:00 a.m., appellant arrived at Linville's residence. Worrell opened the door and appellant barged through the door and ran to the back of Linville's residence to yell at him. When Linville heard appellant at the door, he grabbed a .22 caliber rifle, ran to the refrigerator to retrieve ammunition located on top of the refrigerator, and began loading the rifle. Linville could not load the gun before appellant made it to the back of the residence. When Linville saw appellant approaching, he tossed the rifle into the corner of the room. Appellant began running through the residence looking for money in drawers, cupboards, boxes, the refrigerator and dressers. Worrell retreated to her child's room and appellant kicked the door in on more than one occasion. At one point during the encounter, appellant pulled out a pocket knife, opened it, and threatened to slash and cut Linville and Worrell. Appellant also informed Linville and Worrell that he had a number of friends outside waiting in the car. Appellant threatened that if he was not paid, his friends would come inside and "tear their ass up." Appellant also punched Linville in the stomach two times. Eventually, one of appellant's friends did enter Linville's residence. The friend informed Worrell that he did not approve of what appellant was doing. While his friend was present in Linville's residence, appellant began carrying a television and attached VCR from the living room. The friend informed appellant that nothing was leaving Linville's residence. Subsequently, the friend left the residence and appellant eventually followed. After appellant left, Linville went to a neighbor's house and used the telephone to call the police. Following appellant's departure, Linville and Worrell realized the rifle was missing. Neither Linville nor Worrell saw appellant leave the residence, but Linville did observe appellant carrying the rifle around the house. At one point, Linville observed appellant place the rifle by a shoe rack near the front door. Deputy Dennis Brown of the Stark County Sheriff's Department received a radio transmission that a suspect matching appellant's description had been stopped by the Canton Police Department in the 1100 block of 6th Street N.E. Officers found the rifle between Corey Thompson's legs, in the front seat of the vehicle. Deputy Brown took Linville to that location and Linville identified appellant for the police. Deputy King interviewed appellant and appellant admitted that he had just been at Linville's residence to collect money, but denied taking the rifle from the residence. On June 26, 1998, the Stark County Grand Jury indicted appellant with one count of aggravated robbery. This matter proceeded to trial on September 11, 1998. At trial, appellant testified that during the evening he first met Linville, he vouched for him, before a drug dealer, so Linville could buy drugs on credit. According to appellant, Linville reneged on the debt, the drug dealer shot his vehicle, and he needed the money from Linville. Linville denied the debt. At the close of the state's case, appellant moved for acquittal under Crim.R. 29. The trial court denied the motion. However, the trial court ruled that the case would not go forward on the causing serious physical harm element of aggravated robbery but instead would proceed on the alternative element of committing or attempting to commit a theft offense. Following deliberations, the jury found appellant guilty. The trial court sentenced appellant to a determinate term of five years incarceration. Appellant timely filed his notice of appeal and sets forth the following assignments of error:
 I. THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT AND THE SUFFICIENCY OF THE EVIDENCE THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
 II. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF ROBBERY AND/OR THEFT BY THREAT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
 III. MR. DUNBAR WAS DENIED A FAIR TRIAL, DUE PROCESS OF LAW AND HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL (SIC) FAILED TO REQUEST JURY INSTRUCTIONS AS SET FORTH IN ASSIGNMENT OF ERROR NO. II, SUPRA AND SUPPRESS APPELLANT'S STATEMENTS MADE WHILE IN POLICE CUSTODY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE CONSTITUTION OF THE STATE OF OHIO.
 I
In his First Assignment of Error, appellant contends the jury's verdict is against the manifest weight and sufficiency of the evidence because the state failed to prove beyond a reasonable doubt that he committed or attempted to commit a theft offense and that he had a deadly weapon about his person or control. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based on this standard that we review appellant's First Assignment of Error. R.C. 2911.01 sets forth the elements of aggravated robbery and provides, in pertinent part: (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
* * *
(B) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.
(C) As used in this section, "deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.
R.C. 2913.02 defines theft as follows:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat.
* * *
Appellant contends the state failed to prove, beyond a reasonable doubt, that he committed or attempted to commit a theft offense and that he had a deadly weapon about his person or control. A. Theft or Attempted Theft Appellant contends he was merely attempting to collect money that Mr. Linville owed him when appellant vouched for him so Linville could purchase drugs on credit. Appellant further maintains an attempted theft did not occur as to the television/VCR because Mr. Linville gave the television/VCR to appellant as collateral for the debt. Also, appellant contends nobody saw him take the rifle from Mr. Linville's residence and when stopped by the police, the rifle was discovered between the legs of a passenger in the front seat of the vehicle. Based on these facts, appellant maintains the state failed to prove that appellant committed a theft or attempted theft. The state contends the record contains ample evidence to support the "threat" prong of the definition of theft under R.C.2913.02(A)(4). On the evening in question, appellant barged into Linville's residence and asked Linville for money. Tr. Vol. I at 16, 18, 50, 62. Appellant said he would kill Linville, Worrell and their son if they did not give him money. Id. at 19, 21, 23, 50, 70, 72, 88. During this encounter, appellant hit Linville in the stomach and kicked in the door to the baby's room. Id. at 19, 30, 44, 50-51, 63, 65, 78, 80, 101. Appellant also brandished a pocket knife and threatened to stab and slash Linville and Worrell. Id. at 23, 24, 78, 105. Appellant informed Linville that if he did not get the money he had friends waiting in the car that would shoot him and Worrell. Id. at 18, 20, 45. Clearly, this testimony presented by Linville and Worrell supports the "threat" prong of R.C. 2913.02. Appellant next challenges the attempt to take the television/VCR. Appellant testified that Mr. Linville tried to give him the television/VCR as collateral for the debt. Appellant also points out that no testimony was presented that the walls had been damaged although Mr. Linville testified that appellant ripped the television/VCR from the wall. Appellant maintains that if Mr. Linville intended to give the television/VCR as repayment for a debt, no theft occurred. Both Linville and Worrell testified that appellant attempted to take the television/VCR. Id. at 23, 93, 104. The only reason appellant did not leave the residence with the television/VCR was because a friend told appellant he was not taking the television/VCR in his car. Id. at 55, 57, 93. The fact that appellant did not physically remove the television/VCR from Linville's residence does not negate the crime of theft. It has long been the law in Ohio that the least removing of an object with an intent to steal it constitutes theft, even if the item stolen does not leave the premises. "* * * [T]he least removing of items with an intent to deprive the owner of it is a sufficient asportation, though the property is not removed from the premises of the owner nor retained in the possession of the thief. * * *" State v. Williams (1984), 16 Ohio App.3d 232, 234, citing State v. Brown (Aug. 2, 1983), Montgomery App. No. 8197, unreported, at 4. The testimony of Linville and Worrell establish that appellant had control over the television/VCR and intended to take it. Appellant put it back only after his friend told him he would not take it in his car. R.C. 2923.02 provides that "[i]t is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose." In the case sub judice, appellant did not stop the theft of the television/VCR because he renounced his own actions. Rather, the record indicates appellant left the television/VCR only because his friend entered Linville's residence and informed him that he would not permit appellant to take the television/VCR in his vehicle. Appellant also challenges the finding of theft or attempted theft on the basis that he did not take the rifle from Linville's residence. Neither Linville nor Worrell testified, at trial, that they saw appellant take the rifle from the residence. Appellant also points out that the rifle was discovered between the legs of Corey Thompson in the front passenger seat of the vehicle in which appellant was riding as a passenger in the back seat. Both Linville and Worrell testified that they believed appellant took the rifle. Tr. Vol. I at 23, 52, 98. Appellant was the last person seen with the rifle. Further, there was no evidence that Corey Thompson ever entered Linville's residence. Circumstantial evidence supports the finding that appellant took the rifle from the residence. B. Deadly Weapon I. Pocket Knife Appellant also challenges the element of "deadly weapon" under his conviction for aggravated robbery. R.C. 2923.11(A) defines a "deadly weapon" as "* * * any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Appellee is correct that a pocket knife, per se, is not a deadly weapon. Rather, the state must prove that the knife could inflict death and was adopted for use as a weapon. State v. Anderson (1981),2 Ohio App.3d 71, 72. Mr. Linville testified that the blade on the knife was three or four inches long. Tr. Vol. I at 78. Ms. Worrell testified that when appellant pulled the knife out he showed it to her and Mr. Linville and told them he would stab and slash them if they did not give him the money. Id. at 23-24. Mr. Linville testified that the blade was out when appellant made these threats. Id. at 105. This testimony establishes that the knife could inflict death and appellant used it as a weapon in threatening Mr. Linville and Ms. Worrell into giving him money. As such, the pocket knife is a "deadly weapon" as defined in R.C.2923.11(A). 2. Rifle Although neither Linville nor Worrell saw appellant leave the residence with the rifle, both testified that they thought appellant took the rifle because he had been carrying it around the residence with him. Id. at Vol. I at 23, 52, 98. Clearly, under R.C. 2923.11(A) the rifle is a "deadly weapon." Further, R.C. 2911.01 only requires that the deadly weapon be on or about the offender's person and under his or her control and that the offender display, brandish or indicate he or she possesses it. Appellant did this as he carried the rifle around the residence. Accordingly, both the pocket knife and rifle qualify as "deadly weapons" for purposes of R.C. 2911.01. Based on the testimony presented at trial, we find appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's First Assignment of Error is overruled.
 II
Appellant contends, in his Second Assignment of Error, that he was deprived his rights to a fair trial and due process of law by the trial court's failure to instruct the jury on the lesser included offenses of robbery and/or theft by threat. We disagree. Crim.R. 30 provides that a party must object to an omission in the trial court's jury instructions in order to preserve the error for appeal. The failure to request an instruction constitutes a waiver of the right to appeal from the lack of the instruction, absent a showing of plain error. State v. Keenan (1998), 81 Ohio St.3d 133,151, citing State v. Williford (1990), 49 Ohio St.3d 247, 251. An appellant cannot establish plain error under the plain error rule of "* * * Crim.R. 52(B), unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. Appellant maintains the trial court should have also instructed the jury on robbery because pursuant to State v. Schoonover (Sept. 21, 1998), Adams App. No. 97 CA 647, unreported, following the effective date of Senate Bill 2, robbery is now a lesser included offense of aggravated robbery. Appellant also maintains the trial court should have instructed on theft by threat because it is a lesser included offense of robbery. Based on the testimony presented at trial, appellant contends the jury could have reasonably concluded that appellant did not utilize a deadly weapon. Appellant also argues the jury may have found that appellant was attempting to extort the repayment of a drug-related debt through the use of threats to commit future crimes. In State v. Thomas (1988), 40 Ohio St.3d 213, the Ohio Supreme Court explained that: Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. Id. at paragraph two of the syllabus.
Based on the testimony of Mr. Linville and Ms. Worrell, we do not find the outcome of the trial clearly would have been otherwise had the trial court instructed on robbery and theft by threat. As noted in appellant's First Assignment of Error, the testimony indicated appellant displayed, brandished and indicated possession of a knife and a gun. Appellant used the knife and gun to threaten Mr. Linville and Ms. Worrell. Accordingly, we find the outcome of appellant's trial clearly would not have been otherwise had the trial court instructed on robbery and theft by threat. Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant maintains he received ineffective assistance of counsel because defense counsel failed to request that the jury be instructed on robbery and theft by threat. Appellant also contends defense counsel was ineffective because he failed to file a motion to suppress the statement appellant made to Deputy King. We disagree. The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136. These cases require a two-prong analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective. Whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his essential duties to the client. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995),72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell (1993),506 U.S. 364. It is based on this standard that we review appellant's Third Assignment of Error. Under this assignment of error, appellant first argues defense counsel was ineffective for failing to request instructions on the lesser included offenses of robbery and theft by threat. As noted in appellant's Second Assignment of Error, "* * * a charge of * * * [a] lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Thomas at syllabus. Based on the testimony of Mr. Linville, Ms. Worrell and Detective Roy King, we do not find appellant was prejudiced by defense counsel's failure to request jury instructions on the lesser included offenses of robbery and theft by threat because a reasonable probability does not exist that had defense counsel requested these instructions, the outcome of the trial would have been different. Accordingly, we conclude appellant cannot demonstrate the prejudice prong of the ineffective assistance of counsel test. Appellant next maintains defense counsel should have moved to suppress the evidence of his conversation with Deputy King. In State v. Parkinson (May 20, 1996), Stark App. No. 1995CA00208, unreported, we stated that when counsel has not filed a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. Id. at 3. Our review of the record indicates appellant testified Deputy King did not read him his Miranda rights. Tr. Vol. I at 242. However, Deputy King testified that he read appellant his rights and arrested him. Id. at 161. As in Parkinson, the record has not been developed sufficiently for us to determine whether appellant was prejudiced by defense counsel's failure to file a motion to suppress. As to both arguments, we conclude defense counsel's performance did not fall below an objective standard of reasonable representation and violative of any duties owed to appellant. Appellant's Third Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, P.J. Hoffman, J., and Farmer, J., concur.